# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 4, 2023          Decided August 1, 2023

No. 22-1221

EVERGY KANSAS CENTRAL, INC., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

OKLAHOMA GAS AND ELECTRIC COMPANY, ET AL.,
INTERVENORS

———

Consolidated with 22-1252, 22-1291

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*John Lee Shepherd, Jr.* argued the cause for petitioners. With him on the briefs were *C. Dixon Wallace III* and *Ted J. Murphy.*

*Charlotte H. Taylor* argued the cause for intervenor in support of petitioners. With her on the brief was *James C. Beh.*

*Matthew W.S. Estes*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Matthew J. Binette* argued the cause for respondent-intervenor American Electric Power Service Corporation, et al. With him on the brief were *Christopher R. Jones, Miles H. Kiger, Heather H. Starnes, Ashley M. Bond, Elizabeth P. Trinkle, Craig W. Silverstein, Phyllis G. Kimmel,* and *F. Alvin Taylor.*

Before: WILKINS and WALKER, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: The Federal Energy Regulatory Commission must ensure that the rules for funding new transmission facilities are just and reasonable. A funding regime is not just and reasonable if it makes one party foot the bill for a project with broad benefits. *Old Dominion Electric Cooperative v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018).

Here, two transmission owners and a utility company say FERC approved an unjust and unreasonable change to the transmission-funding regime in a region managed by Southwest Power Pool. The new regime, the Petitioners say, will likely force transmission owners to pay for projects that benefit the entire power grid. So they petitioned for judicial review.

But the Petitioners oversell the risk that the new regime will foist the costs of new projects on individual owners. For that to happen, the regime's primary mechanisms for allocating

costs would have to fail. In any case, FERC may balance the need to ensure that transmission owners bear perfectly proportional costs and benefits with other policy goals. *Consolidated Edison Co. v. FERC*, 45 F.4th 265, 286 (D.C. Cir. 2022). It did that here by approving a regime that allows participants in regional transmission zones to collaborate on selecting and funding new projects.

We thus deny the petitions for judicial review.

**I**

**A**

The transmission grid takes electricity from power plants to end users. Regional Transmission Organizations help manage the grid by coordinating the "planning, operation, and use" of electricity transmission within a given area. *South Carolina Public Service Authority v. FERC*, 762 F.3d 41, 50 (D.C. Cir. 2014). Among other things, RTOs set the rules for "transmission planning and operation," including planning and funding new transmission facilities. *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1364 (D.C. Cir. 2004) (cleaned up); s*ee also* Order No. 1000, 136 FERC ¶ 61,051 (2011).

But RTOs do not have a free hand setting the rules. Instead, FERC reviews RTOs' rules (called "rates") to ensure that they are "just and reasonable." 16 U.S.C. § 824d(a). A rate is not just and reasonable if it violates the cost-causation principle, which mandates that "the rates charged for electricity should reflect the costs of providing it." *Old Dominion Electric Cooperative v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018).

**B**

Here, transmission owners and a utility company in a region managed by an RTO called Southwest Power Pool say its funding rules violate the cost-causation principle.

Southwest's region covers seventeen states in the center of the country. Its territory is divided into zones, ten of which have multiple transmission owners. For years, Southwest applied the same cost-allocation rules in those ten zones with multiple transmission owners.

Under those rules, each transmission owner could unilaterally decide to build new transmission facilities. The costs would then be paid by zone customers (companies using the transmission grid) in proportion to how much they used the grid. But that let transmission owners thrust the costs of new facilities onto customers, regardless of how much the customers benefited.

To give customers more say, Southwest proposed a new way to fund transmission projects in its region. Its proposal works like this. The largest customer in a zone selects a transmission owner as the Facilitating Transmission Owner for that zone. With input from other owners and customers, the Facilitating Transmission Owner proposes Zonal Planning Criteria — selecting new transmission facilities to build and choosing how to fund them. The criteria are then put to a two-step vote.

- Step 1: The zone's customers vote, with each customer's vote weighted according to its use of the transmission facilities in the zone. To pass step one, the criteria must be approved by a percentage of votes greater than or equal to the

largest customer's load plus one half of the zone's remaining load.

- Step 2: All the zone's transmission customers and transmission owners vote on the criteria, with each receiving one vote. A simple majority is enough to pass step two.

Southwest's proposal also puts in place three backup plans.

- Backup Plan A: If the proposed Zonal Planning Criteria do not get enough votes under the two-step voting process, the last approved Zonal Planning Criteria apply. If there are no approved Zonal Planning Criteria, Backup Plan B applies.

- Backup Plan B: Southwest's Regional Planning Criteria apply.

- Backup Plan C: At any time, any transmission owner in the zone can create its own Local Planning Criteria, regardless of the Zonal or Regional Planning Criteria in place. That lets the owner build any facility it likes, even though the project does not satisfy the Zonal or Regional Planning Criteria, but it must foot the bill itself.

To put its proposal into action, Southwest first had to prove to FERC that its new funding regime was "just and reasonable." 16 U.S.C. § 824d(a). Several members of the region objected, including petitioners Evergy and GridLiance, and intervenor Oklahoma Gas and Electric Company (we'll refer to these three parties as the "Petitioners").

The Petitioners claimed that Southwest's plan violated the cost-causation principle, which generally prohibits FERC from

"singl[ing] out a party for the full cost of a project, or even most of it, when the benefits of the project are diffuse." *Old Dominion Electric Cooperative v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018) (cleaned up). The Petitioners claimed that Backup Plan C runs afoul of that rule because it can force one transmission owner to pay for a new facility with widespread benefits.

FERC rejected the Petitioners' argument in its initial order and on rehearing. So Evergy and GridLiance petitioned for judicial review. Oklahoma Gas later intervened.

## II

Before getting to the merits, we briefly explain why we have jurisdiction.

Any party "aggrieved by" a FERC order may seek judicial review. 16 U.S.C. § 825l(b). But that party must first file an application for rehearing with the Commission. *Id.* § 825l(a). Once FERC decides the rehearing application, the aggrieved party has sixty days to petition for judicial review. *Id.* § 825l(b). If FERC does *not* act on a rehearing application within thirty days, it is "deemed to have been denied" and an aggrieved party may seek review of FERC's initial order. *Id.* § 825l(a).

Here, Petitioners filed applications for rehearing of FERC's initial order. FERC did not respond to those applications within thirty days, so Evergy's application was "deemed to have been denied." *Id.* Evergy then petitioned for review of FERC's order. *Id.* Later, FERC issued a notice of denial of rehearing by operation of law, and GridLiance filed its own petition for judicial review.

So far, so ordinary. But after the Petitioners filed their judicial-review petitions, FERC issued a rehearing order addressing arguments the transmission owners had raised in their rehearing applications. A day later, Evergy and GridLiance moved to amend their judicial-review petitions to include FERC's new order.

FERC says those amendments may not be enough to give this Court jurisdiction over "arguments" in Evergy's brief "addressing issues raised" in FERC's rehearing order. Resp. Br. 30. That's because Rule 15(a)(2) of the Federal Rules of Appellate Procedure — which is jurisdictional — mandates that a petition for review "must . . . specify the order or part thereof to be reviewed." Fed. R. App. Proc. 15(a)(2)(C); *see Sinclair Broadcast Group, Inc. v. FCC*, 284 F.3d 148, 156 (D.C. Cir. 2002). And the petition specified FERC's first order, but not its second.

We need not decide today whether FERC is correct. Unlike some rehearing orders — which are separate from and supersede the agency's original order — FERC's second order in this case merely *modified* its initial order. JA 439 ("In response to the requests for rehearing, the [Initial] Order is hereby modified and the result sustained."). That means that FERC's initial order — as modified — is still the operative order approving Southwest's proposal. And the Petitioners adequately "specif[ied]" that order in their petitions for judicial review. Fed. R. App. Proc. 15(a)(2)(C). *See Sierra Club v. FERC*, 68 F. 4th 630, 646 (D.C. Cir. 2023) ("Petitioners were under no obligation to file a new petition for review" after FERC issued "an amendment to" its original order, because "their petitions adequately specif[ied] the orders to be reviewed.").

We thus have jurisdiction over the Petitioners' arguments addressing FERC's second order. To review those arguments, we grant the Petitioners' motion to amend.

**III**

On review, we uphold FERC's orders unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). FERC's orders must be supported by substantial evidence, reasonable, and reasonably explained. *Long Island Power Authority v. FERC*, 27 F.4th 705, 712 (D.C. Cir. 2022).

Here, FERC's order approving Southwest's funding proposal meets those standards.

**A**

The Petitioners contend that Southwest's revised funding proposal violates the cost-causation principle. We disagree.

Recall that Backup Plan C can leave a single transmission owner to foot the bill for a new transmission facility even if it will benefit an entire zone. *See supra*, Section I.B. The Petitioners claim that Backup Plan C will be the norm under Southwest's proposal. They fear that customers will routinely vote down beneficial projects, forcing owners to pay for them under Backup Plan C. And that, they say, does not fit the cost-causation principle.

The cost-causation principle means that FERC "may not single out a party for the full cost of a project, or even most of it, when the benefits of the project are diffuse." *Old Dominion Electric Cooperative v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018) (cleaned up). But that rule is not rigid. "FERC may

permissibly approve a rate that does not perfectly track cost causation," particularly if it is "balanc[ing] competing goals." *Consolidated Edison Co. v. FERC*, 45 F.4th 265, 286, 288 (D.C. Cir. 2022) (cleaned up); *see also Carnegie Natural Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992) (FERC "may rationally emphasize other, competing policies and approve measures that do not best match cost . . . causation.").

That is what FERC did here. Southwest's old funding regime let transmission owners unilaterally thrust the costs of new transmission facilities onto customers — whether it benefited them or not. When FERC approved Southwest's new proposal, it balanced the benefit of eliminating that unfairness against the risk that transmission owners *might* pay for some upgrades alone. Balancing those "competing policy goals on a ratemaking matter" is left to FERC's "considered judgment." *Consolidated Edison*, 45 F.4th at 288.

To be sure, in *Old Dominion* we set aside FERC's approval of a rate that "categorically prohibit[ed] any cost sharing for high-voltage projects," leaving transmission owners to pay. 898 F.3d at 1260. But here, Southwest's proposal does not "categorically" prohibit cost sharing. *Id.* Indeed, cost sharing is routine if new transmission projects get approval from a zone's customers. Only Backup Plan C leaves a transmission owner to pay the whole cost of its own project. And for Backup Plan C to apply, the proposed project must fail to satisfy the relevant criteria adopted in the initial two-step voting process or through Backup Plans A or B. *See supra*, Section I.B.

Pushing back, the Petitioners say that Backup Plan C will be the rule, not the exception, because free-riding customers will vote down beneficial projects to avoid paying for them. But on the record before us, it is too soon to tell if they are correct. And even if they *are* correct and Backup Plan C

someday forces a transmission owner to fund a project with significant regional benefits, that owner can seek a tariff change or make another challenge to Southwest's funding regime. *See Coalition of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1022 (D.C. Cir. 2022).

For now, the Petitioners have not demonstrated a violation of the cost-causation principle.

**B**

The Petitioners make five additional challenges to FERC's order. None persuades.

First, the Petitioners say FERC improperly shifted the burden of proof. Where, as here, a party moves to suspend a rate, that party bears the burden of showing that the change is "just and reasonable." *In re NTE Connecticut, LLC*, 26 F.4th 980, 989-90 (D.C. Cir. 2022) (cleaned up). If that party — here Southwest — makes a prima facie showing that the rate should be suspended, the burden shifts to the opposing party to rebut it. *Southwest Power Pool, Inc.*, 180 FERC ¶ 61,192, at P 52-53 (2022). FERC followed that procedure here. It first found that Southwest had "shown that the proposed Tariff revisions are just and reasonable" and then it explained why it disagreed with the Petitioners' rebuttal evidence. JA 259.

Second, the Petitioners argue that FERC violated the Federal Power Act by treating one zone in Southwest's region differently from the others. True, FERC may not charge "similarly situated entities . . . different rates for no good reason." *Consolidated Edison Co. v. FERC*, 45 F.4th 265, 282 (D.C. Cir. 2022). Also true, FERC treated Zone 19 differently by exempting it from the 2022 Plan. But Zone 19 is not "similarly situated" to the other zones. *Id.* That's because it

has long had its own two-step voting process and was not subject to Southwest's old funding regime. So unlike the other zones, there was no need to implement a new regime in Zone 19.

Third, the Petitioners contend that FERC departed from its precedent without "provid[ing] a reasoned analysis" explaining that change. *CBS Corp. v. FCC*, 785 F.3d 699, 708 (D.C. Cir. 2015) (cleaned up). In one of its prior decisions, *PSEG*, FERC approved a tariff amendment designed to eliminate a holdout problem. *Public Service Electric and Gas Co.*, 179 FERC ¶ 61,001 (2022). The tariff at issue in that decision allowed small transmission owners to easily block large owners' transmission-planning and cost-allocation proposals. *Id.* at P 7-8, 24-32. Here, the Petitioners say *PSEG* compels FERC to reject Southwest's proposal because it generates a similar holdout problem — a zone's customers can vote down transmission upgrades, forcing transmission owners to bear the costs under Backup Plan C. But as FERC explained, *PSEG* doesn't mean "a voting structure allowing smaller entities to cast a deciding vote is de facto unjust and unreasonable." JA 263. In any case, it is too soon to tell whether Southwest's proposal will *in fact* cause holdouts.

Fourth, the Petitioners argue that FERC has allowed Southwest to abdicate its planning responsibilities. We disagree. While RTOs like Southwest are responsible for regional planning, they need not see to every detail. *See* Order No. 1000, 136 FERC ¶ 61,051, at P 19, 157 (2011). Southwest satisfied its responsibility by creating a detailed voting framework to let transmission owners and customers collaborate on planning upgrades in each zone.

Finally, Petitioners argue that FERC ignored substantial evidence that Southwest's proposal will have adverse effects

on grid reliability. But in approving Southwest's proposal, FERC adequately considered this concern and reasonably concluded that any adverse impacts to grid reliability were "speculative" at best. 181 FERC ¶ 61,053, at P 44.

\* \* \*

FERC's approval of Southwest's tariff amendment did not violate the cost-causation principle, the Federal Power Act, or the Administrative Procedure Act. So we deny the petitions for review.

*So ordered.*